1

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

9   ASH GROVE CEMENT COMPANY,

10              Plaintiff,

11         v.

12   ACE PROPERTY AND CASUALTY
     INSURANCE COMPANY, as successor to
13   CENTRAL NATIONAL INSURANCE
     COMPANY OF OMAHA; AMERICAN
14   HOME ASSURANCE COMPANY;
     AMERICAN INSURANCE COMPANY;
15   FEDERAL INSURANCE COMPANY;
     LEXINGTON INSURANCE COMPANY;
16   LIBERTY MUTUAL INSURANCE
     COMPANY; OAKWOOD INSURANCE
17   COMPANY, as successor to CENTRAL
     NATIONAL INSURANCE COMPANY OF
18   OMAHA; ONEBEACON INSURANCE
     COMPANY, as successor to HOUSTON
19   GENERAL INSURANCE COMPANY; TIG
     INSURANCE COMPANY, as successor to
20   INTERNATIONAL INSURANCE
     COMPANY; TWIN CITY FIRE INSURANCE
21   COMPANY; UNITED STATES FIDELITY &
     GUARANTY COMPANY; UNITED STATES
22   FIRE INSURANCE COMPANY;
     WESTCHESTER FIRE INSURANCE
23   COMPANY, as successor to
     INTERNATIONAL INSURANCE
24   COMPANY; WESTPORT INSURANCE
     CORPORATION, as successor to
25   EMPLOYERS REINSURANCE COMPANY,

26              Defendants.

27

28

NO. 15-2-11336-4 SEA

**COMPLAINT FOR DECLARATORY
JUDGMENT**

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 1

1    In and for its Complaint, plaintiff Ash Grove Cement Company ("Ash Grove") hereby

2    asserts, complains, and alleges as follows:

3                              I.      **NATURE OF THE ACTION**

4          1.1      This is a civil action for declaratory judgment.  Ash Grove brings this action against

5    the defendant primary, excess, and umbrella insurance companies identified herein (collectively,

6    the "Insurers") concerning insurance coverage for Ash Grove for defense and indemnity costs for

7    property and other damages and losses (including, but not limited to, remedial investigations,

8    feasibility studies, remedial designs and actions, natural resource assessments, injuries, and

9    damages, and environmental liabilities under the Comprehensive Environmental Response,

10   Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*., and Washington's Model

11   Toxics Control Act ("MTCA"), chapter 70.105D RCW), arising from the alleged contamination of

12   the Lower Duwamish Waterway Superfund Site (the "Site") in Seattle, Washington.  Ash Grove

13   seeks a declaration of Ash Grove and its Insurers' respective rights, duties, and obligations under

14   the Insurers' respective insurance policies in connection with Ash Grove's potential liabilities at the

15   Site.

16                              II.      **PARTIES**

17         2.1      Plaintiff Ash Grove is a Delaware corporation licensed and authorized to do business

18   in the state of Washington.  Ash Grove owns and operates a cement manufacturing and processing

19   plant and associated terminal and is the former lessee of a cement import terminal in Seattle,

20   Washington.

21         2.2      On information and belief, defendant Ace Property and Casualty Insurance

22   Company ("ACE P&C") is a Pennsylvania insurance company and a successor in interest to Central

23   National Insurance Company of Omaha, a former Nebraska insurance company, that, at all times

24   relevant to this action, did transact business and issue property and casualty insurance in the state of

25   Washington.

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 2

CASCADIA LAW GROUP PLLC
1201 THIRD AVENUE, SUITE 320
SEATTLE, WA 98101
(206) 292-6300

1    2.3    On information and belief, defendant American Home Assurance Company

2 ("American Home") is a New York insurance company that, at all times relevant to this action, did

3 transact business and issue property and casualty insurance in the state of Washington.

4    2.4    On information and belief, defendant American Insurance Company ("American

5 Insurance") is an Ohio insurance company that, at all times relevant to this action, did transact

6 business and issue property and casualty insurance in the state of Washington.

7    2.5    On information and belief, defendant Federal Insurance Company ("Federal

8 Insurance") is an Indiana insurance company that, at all times relevant to this action, did transact

9 business and issue property and casualty insurance in the state of Washington.

10    2.6    On information and belief, defendant Lexington Insurance Company ("Lexington")

11 is a Delaware insurance company that, at all times relevant to this action, did transact business and

12 issue property and casualty insurance in the state of Washington.

13    2.7    On information and belief, defendant Liberty Mutual Insurance Company ("Liberty

14 Mutual") is a Massachusetts insurance company that, at all times relevant to this action, did transact

15 business and issue property and casualty insurance in the state of Washington.

16    2.8    On information and belief, defendant Oakwood Insurance Company ("Oakwood") is

17 a Tennessee insurance company and a successor in interest to Central National Insurance Company

18 of Omaha, a former Nebraska insurance company, that, at all times relevant to this action, did

19 transact business and issue property and casualty insurance in the state of Washington.

20    2.9    On information and belief, defendant OneBeacon Insurance Company

21 ("OneBeacon") is a Pennsylvania insurance company and a successor in interest to Houston

22 General Insurance Company, a former Texas insurance company, that, at all times relevant to this

23 action, did transact business and issue property and casualty insurance in the state of Washington.

24    2.10    On information and belief, defendant TIG Insurance Company ("TIG") is a

25 California insurance company and a successor in interest to International Insurance Company, a

26 former Illinois insurance company, that, at all times relevant to this action, did transact business and

27 issue property and casualty insurance in the state of Washington.

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 3

1    2.11    On information and belief, defendant Twin City Fire Insurance Company ("Twin
2    City") is an Indiana insurance company that, at all times relevant to this action, did transact
3    business and issue property and casualty insurance in the state of Washington.

4    2.12    On information and belief, defendant United States Fidelity & Guaranty Company
5    ("USF&G") is a Connecticut insurance company that, at all times relevant to this action, did
6    transact business and issue property and casualty insurance in the state of Washington.

7    2.13    On information and belief, defendant United States Fire Insurance Company ("U.S.
8    Fire") is a Delaware insurance company that, at all times relevant to this action, did transact
9    business and issue property and casualty insurance in the state of Washington.

10    2.14    On information and belief, defendant Westchester Fire Insurance Company
11    ("Westchester") is a Pennsylvania insurance company and a successor in interest to International
12    Insurance Company, a former Illinois insurance company, that, at all times relevant to this action,
13    did transact business and issue property and casualty insurance in the state of Washington.

14    2.15    On information and belief, defendant Westport Insurance Corporation ("Westport")
15    is a Missouri insurance company and a successor in interest to Employers Reinsurance Company, a
16    former Missouri corporation, that, at all times relevant to this action, did transact business and issue
17    property and casualty insurance in the state of Washington.

18    III.    **JURISDICTION AND VENUE**

19    3.1    This Court has jurisdiction over the subject matter of this action pursuant to RCW
20    2.08.010 and RCW 7.24.010, and because the Site giving rise to the underlying liabilities is located
21    within the state of Washington, and the alleged occurrences occurred within the state of
22    Washington.

23    3.2    This Court has jurisdiction over each of the named defendant Insurers because, on
24    information and belief, each defendant Insurer is licensed and authorized to do business in the state
25    of Washington; has, within the relevant time periods, transacted the business of selling insurance in
26    the state of Washington; and has issued liability insurance policies to Ash Grove which cover risks
27    located in the state of Washington.

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 4

1      3.3    Venue is proper in King County pursuant to RCW 4.12.025 because one or more of

2   the defendants conducts business in King County, the events and property giving rise to the dispute

3   occurred in or are located in King County, and the majority of the operative facts that underlie Ash

4   Grove's claims arose in King County.

5                          IV.    **FACTUAL BACKGROUND**

6      4.1    Ash Grove realleges and incorporates by reference all preceding paragraphs as if

7   fully set forth herein.

8      **A.    Lower Duwamish Waterway Superfund Site (the "Site")**

9      4.2    The Site is an approximate 5-mile stretch of the Duwamish River that flows into

10  Elliott Bay and the Puget Sound in Seattle, King County, Washington.  The Site includes the

11  waterway and upland sources of contamination to the waterway.  The Lower Duwamish Waterway

12  ("LDW") and adjacent upland areas have served as Seattle's major industrial corridor since the

13  LDW was created by widening and straightening much of the Duwamish River in the early 1900s,

14  and industrial activities have been in existence along and in connection with the waterway

15  continuously since the early 1900s.

16     4.3    On information and belief, and as alleged by the United States Environmental

17  Protection Agency ("EPA"), historic industrial use of hazardous substances, and/or various spills

18  and other accidents involving such hazardous substances, along the waterway have resulted in the

19  release of hazardous substances into the environment and have left the waterway and sediments

20  contaminated with hazardous substances and toxic chemicals, resulting in pollution and property

21  damage.

22     4.4    In 2001, the EPA listed the Site on EPA's National Priorities List.  In 2002, the State

23  of Washington Department of Ecology ("Ecology") added the Site to the Washington Hazardous

24  Sites List in 2002.  On information and belief, hazardous substances associated with and released in

25  the course of historical industrial operations, and/or involved in various spills and other accidents

26  along the waterway, have led to pollution and resulting property damage in the waterway sediments

27  that include, but are not necessarily limited to, polychlorinated biphenyls (PCBs), dioxins/furans,

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 5

1   polycyclic aromatic hydrocarbons ("PAHs"), mercury and other metals, arsenic, and other

2   contaminants.

3       4.5     On information and belief, and as alleged by EPA, hazardous substances associated

4   with and released in the course of historical industrial operations, and/or involved in various spills

5   and other accidents along the waterway, entered the LDW through a variety of pathways, including

6   discharge through pipes, surface water or groundwater; discharge of materials directly into the

7   waterway; or soil erosion.  On information and belief, these spills and releases have occurred

8   throughout the industrial use of the waterway, specifically including during the terms of the

9   Policies, as defined below, at issue in this action.  On information and belief, since the

10  industrialization of the LDW in the early 1900s, hazardous substances are alleged to have been

11  released to the LDW and to have contributed to the Site contamination and resulting property

12  damage.

13      4.6     EPA and Ecology have divided lead-agency responsibility for addressing

14  contamination at the Site, with EPA taking lead agency status for the in-waterway portion of the

15  Site and Ecology taking lead agency status for upland source control.

16      4.7     In or around 2007, EPA notified over 100 companies, including Ash Grove, of their

17  status as a potentially responsible party ("PRP") under CERCLA for Site liability.

18      4.8     On information and belief, four PRPs—the City of Seattle, King County, the Port of

19  Seattle, and the Boeing Company (collectively the "Lower Duwamish Waterway Group" or

20  "LDWG") have performed a number of "early action" sediment cleanups in several of the most

21  contaminated sections of the river.  On information and belief, the LDWG PRPs collectively have

22  spent in excess of $100 million for investigation, planning, and early-action cleanup, portions of

23  which they will seek to recover from other PRPs.

24      4.9     In or around 2013, the LDWG parties invited many of these PRPs to participate in

25  developing and participating in an alternate dispute resolution ("ADR") process to allocate

26  responsibility for LDW Site liability.  Ash Grove is participating in and defending itself in the ADR

27  process.  Dozens of public and private entities representing historic or current owners or operators

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 6

CASCADIA LAW GROUP PLLC
1201 THIRD AVENUE, SUITE 320
SEATTLE, WA 98101
(206) 292-6300

1   of facilities along the waterway in Seattle, Washington, and with a nexus to the LDW are

2   participating in the ADR process.

3       4.10   In 2014, EPA issued the final LDW Site Record of Decision ("ROD") documenting

4   the approved Site-wide sediment cleanup approach.  On information and belief, EPA is continuing

5   to conduct sampling and remedial design work intended to inform and guide Site-wide cleanup.

6   EPA's ROD estimates the Site-wide cleanup will cost $343 million.

7       4.11   Pursuant to the ROD, the site-wide cleanup will involve the dredging of

8   contaminated sediments from much of the river, the capping of less contaminated areas, and the

9   enhancement of natural sediment recovery by adding a carbon substrate to certain cap materials.

10      4.12   In addition to the Site-wide cleanup, Natural Resource Damage ("NRD") Trustees

11  for the LDW Site have alleged that the historic disposal and release of hazardous substances at the

12  site have contributed to damages or injury to, destruction of, or loss of natural resources at the Site,

13  including the benthic community, flatfish, and salmon, particularly Chinook salmon and steelhead,

14  which are listed as threatened under the Endangered Species Act.

15      4.13   NRD Trustees for the LDW include the State of Washington, including Ecology (as

16  lead state trustee), Fish and Wildlife, and Natural Resources; the National Oceanic and

17  Atmospheric Administration of the U.S. Department of Commerce; and the U.S. Department of the

18  Interior, which includes the Fish and Wildlife Service and the Bureau of Indian Affairs, the

19  Muckleshoot Indian Tribe, and the Suquamish Tribe.

20      **B.     Ash Grove Property Ownership and Operations**

21      4.14   Ash Grove is a family-owned company that manufactures portland cement,

22  operating in eight plants throughout the country, including in the state of Washington.

23      4.15   Ash Grove has owned, leased, and/or operated at facilities within the boundaries of

24  the LDW Site, in Seattle, Washington, and specifically at the following locations:

25          a.     From 1984 to present, Ash Grove, itself or through a wholly-owned

26  subsidiary, has owned and/or operated a portland cement manufacturing and processing plant and

27  associated terminal at real property located at 3801 East Marginal Way S., Seattle, Washington, and

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 7

CASCADIA LAW GROUP PLLC
1201 THIRD AVENUE, SUITE 320
SEATTLE, WA 98101
(206) 292-6300

1   within the boundaries of the LDW Site (the "Seattle Plant").  Ash Grove employs approximately 80

2   people in conjunction with its operations at the Seattle Plant, and the day-to-day operations are

3   managed locally by a Plant Manager.  The Seattle Plant is located on the east side of the LDW at

4   River Mile 0.0 to 0.1.  For purposes of this Complaint, the "Site" includes, but is not limited to, the

5   Seattle Plant.

6           b.      From 1987 to 1991, Ash Grove, itself or through a wholly-owned subsidiary,

7   leased and/or operated a cement import and distribution terminal located on a 6.53-acre parcel of

8   real property located at 5900 West Marginal Way S., Seattle, Washington, and within the

9   boundaries of the LDW Site (the "West Terminal").  During its operations, Ash Grove employed up

10   to approximately ten people in conjunction with its former operations at the West Terminal, and the

11   day-to-day operations were managed locally by a Terminal Manager and overseen by the Plant

12   Manager at Ash Grove's Seattle Plant facility.  The West Terminal was located on the west side of

13   the LDW at River Mile 1.4 to 1.5.  For purposes of this Complaint, the "Site" includes, but is not

14   limited to, the West Terminal.

15       4.16   On information and belief, cement manufacturing and processing have been

16   conducted at the Seattle Plant property and facilities for over 85 years, and continuously since in or

17   around 1928, specifically including during the terms of the Policies, as defined below, at issue in

18   this action.  On information and belief, former owners of and operators at the Seattle Plant property

19   used hazardous substances in connection with operations at the plant.  During this operational

20   history, hazardous substances are alleged to have been released at and from the Seattle Plant subject

21   property and to have contributed to the Site contamination and resulting property damage.

22       4.17   On information and belief, industrial activities have been conducted at the West

23   Terminal property and facilities for over 80 years, and continuously since in or around 1930,

24   specifically including during the terms of the Policies, as defined below, at issue in this action.  On

25   information and belief, former owners of and operators at the West Terminal property used

26   hazardous substances for use in connection with operations at the subject property, including, but

27   not necessarily limited to, activated charcoal and wheylerite production, chemical production,

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 8

1    including the production of resins for the plywood industry, as well as adhesives, glues, wood

2    preservatives (pentachlorophenol), plastic polymers, and other chemicals, and bulk cement import

3    and distribution.  During this operational history, hazardous substances are alleged to have been

4    released at and from the West Terminal subject property and to have contributed to the Site

5    contamination and resulting property damage.

6         4.18     In 2007, EPA identified Ash Grove as a PRP with respect to the Site and provided

7    Ash Grove with a general notice letter of potential liability alleging Ash Grove to be a PRP under

8    CERCLA based on Ash Grove's ownership and the historic activities associated with the Site.  In

9    2012, EPA provided Ash Grove with a second general notice letter confirming its PRP status with

10   respect to the Site and its potential liability under CERCLA for the cleanup of the Site or the costs

11   EPA has incurred or will incur in cleanup of the Site.

12        4.19     In 2009, the NRD Trustees advised Ash Grove of their natural resource damage

13   claim against Ash Grove under CERCLA for damages arising from injuries to, destruction of, or

14   loss of publicly owned or managed natural resources resulting from the releases of hazardous

15   substances at the Site, including the Trustees' costs in assessing those damages.

16        4.20     In 2013, the LDWG parties alleged that a portion of the total cleanup costs

17   associated with the Site would be allocated to Ash Grove and invited Ash Grove, and other PRPs,

18   to participate in an ADR allocation process to allocate responsibility for LDW liability.  Ash Grove

19   is defending itself in the ADR process.

20        4.21     Ash Grove has incurred and will incur damages, including defense and

21   indemnification costs for, among other things, the environmental cleanup of the Site and resulting

22   property damage; for natural resource damages; and for and in responding to the allegations by

23   EPA, Ecology, the NRD Trustees, and/or by other PRPs arising out of and related to the LDW Site,

24   including, but not limited to, the Seattle Plant and the West Terminal.

25

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 9

1     **C.**    **Insurance Policies**

2     4.22    The Insurers and/or their predecessors in interests sold primary, umbrella, and/or

3 excess liability insurance policies (collectively, the "Policies") that provide insurance coverage to

4 Ash Grove.

5     4.23    On information and belief, the Insurers sold and issued to Ash Grove those Policies

6 identified on the attached Exhibit A, which insurance policies provide defense and indemnification

7 coverage for Ash Grove's alleged liabilities for environmental contamination and hazardous waste

8 at the Site, which includes, without limitation, liabilities and losses associated with property

9 damage caused by an accident or occurrence.

10     4.24    On information and belief, the Insurers may have issued additional policies of

11 insurance to Ash Grove that have not yet been discovered, but may be discovered in the course of

12 discovery, which insurance policies provide defense and indemnification coverage for Ash Grove's

13 alleged liabilities for environmental contamination and hazardous waste at the Site, which includes,

14 without limitation, liabilities and losses associated with property damage caused by an accident or

15 occurrence.

16     4.25    On information and belief, the Insurers were and are licensed in the state of

17 Washington and authorized to issue property and casualty insurance covering risks in the state of

18 Washington.

19     4.26    The Policies provide, without limitation, coverage for liabilities arising from

20 accidents or occurrences that occurred during the Policies' respective term(s) and effective

21 period(s).

22     4.27    EPA, Ecology, the NRD Trustees, and/or other PRPs associated with the Site have

23 alleged Ash Grove to be liable for damages, including property damage, within the meanings of the

24 Policies.

25     4.28    Property damage and occurrences within the meanings of the Policies have occurred

26 or are alleged to have occurred at the Seattle Plant, the West Terminal, and/or otherwise at and

27

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 10

1    associated with the Site in Seattle, Washington, and which give rise to Ash Grove's alleged

2    liabilities.

3        4.29    EPA, Ecology, the NRD Trustees, and/or other PRPs associated with the Site have

4    alleged Ash Grove to be liable for damages, including property damage, resulting from accidents or

5    occurrences at the Site generally, and not attributable to and which may pre-date and/or post-date

6    Ash Grove's operations.

7        4.30    Ash Grove has given the Insurers notice of the claims against Ash Grove, and of its

8    alleged liabilities at and associated with the LDW Site.

9        4.31    Ash Grove has complied with or will comply with all conditions precedent in the

10   Policies.

11       4.32    Each Insurer is obligated under the terms of its insurance policies to defend or pay or

12   contribute to the cost of defense of such claims and actions, and for such future claims and actions,

13   brought by third parties, including, but not limited to, EPA, Ecology, the NRD Trustees, and/or

14   other PRPs, and to pay all losses and/or all sums that Ash Grove becomes legally obligated to pay

15   as a result of such claims and actions.

16       4.33    Defendant USF&G has agreed to and is contributing to Ash Grove's costs of defense

17   of potential Site liabilities under a reservation of rights under two policies issued to Ash Grove:

18   Policy Number 1CC025144845, effective from January 1, 1984 to January 1, 1985; and Policy

19   Number 1CC047821004, effective from January 1, 1985 to January 1, 1986 (collectively, the "1984

20   and 1985 USF&G Policies").

21       **V.    CAUSE OF ACTION: DECLARATORY JUDGMENT**

22       5.1    Ash Grove realleges and incorporates by reference all preceding paragraphs as if

23   fully set forth herein.

24       5.2    The Insurers have failed to recognize and provide all coverage to which Ash Grove

25   is entitled under each of their respective policies in connection with the Site.

26       5.3    Pursuant to chapter 7.24 RCW, Ash Grove is entitled to a declaratory judgment as to

27   the rights, duties, and obligations of the parties under the Policies in connection with the Site.

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 11

CASCADIA LAW GROUP PLLC
1201 THIRD AVENUE, SUITE 320
SEATTLE, WA 98101
(206) 292-6300

1    5.4    Specifically, Ash Grove is entitled to a declaratory judgment that (1) where provided

2    under the terms of the Policies (except for the 1984 and 1985 USF&G Policies, under which

3    USF&G has already agreed to and is contributing to Ash Grove's costs of defense of potential Site

4    liabilities under a reservation of rights), the Insurers have an obligation to defend or pay full

5    defense costs in connection with the underlying claims, demands, suits, and/or proceedings against

6    Ash Grove arising out of the Site; (2) the Insurers have an obligation under each of their respective

7    policies to indemnify Ash Grove for its losses and liabilities, including cleanup costs and other

8    damages, associated with the Site; and (3) the Insurers have an obligation under each of their

9    respective policies to provide Ash Grove all other coverage to which Ash Grove is entitled in

10    connection with the Site.

11    5.5    An actual and justiciable controversy within the jurisdiction of the Court exists

12    between Ash Grove and the Insurers as to the rights, duties, and obligations of the parties under the

13    Policies (except with respect to USF&G's defense obligations under the 1984 and 1985 USF&G

14    Policies, under which USF&G has already agreed to and is contributing to Ash Grove's costs of

15    defense of potential Site liabilities under a reservation of rights) concerning the Site.

16    5.6    A judicial declaration is necessary and appropriate at this time so that Ash Grove

17    may ascertain the defense, indemnity, and other obligations of the Insurers in connection with Site.

18                              **VI.    PRAYER FOR RELIEF**

19    WHEREFORE, having stated the above causes of action, plaintiff Ash Grove Cement

20    Company prays for judgment in its favor as follows:

21    A.    For declaratory relief against each of the Insurers, declaring that (1) where provided

22    under the terms of the Policies (except for the 1984 and 1985 USF&G Policies, under which

23    USF&G has already agreed to and is contributing to Ash Grove's costs of defense of potential Site

24    liabilities under a reservation of rights), the Insurers have an obligation to defend or pay full

25    defense costs in connection with the underlying claims, demands, suits, and/or proceedings against

26    Ash Grove arising out of the Site; (2) the Insurers have an obligation under each of their respective

27    policies to indemnify Ash Grove for its losses and liabilities, including cleanup costs and other

28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 12

1   damages, associated with the Site; and (3) the Insurers have an obligation under each of their

2   respective policies to provide Ash Grove all other coverage to which Ash Grove is entitled in

3   connection with the Site.

4        B.    For entry of judgment in favor of Ash Grove for the amount of all costs incurred by

5   Ash Grove in this action, including reasonable attorneys' fees and costs pursuant to RCW 7.24.100;

6   *Olympic Steamship Company v. Centential Insurance Company*, 117 Wn.2d 37 (1991); or as may

7   otherwise be allowable pursuant to law or equity; and

8        C.    For such other and further relief as the Court deems just and equitable.

9        Dated:  May 8, 2015.

10
11
12
13
14
15

             s/Stephen J. Tan
             WSBA No. 22756
             Joseph A. Rehberger, WSBA No. 35556
             CASCADIA LAW GROUP PLLC
             1201 Third Avenue, Suite 320
             Seattle, WA  98101
             Telephone:  (206) 292-6300
             Fax: (206) 292-6301
             E-Mail: stan@cascadialaw.com
             E-Mail: jrehberger@cascadialaw.com

16                *Attorneys for Plaintiff Ash Grove Cement Company*

17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DECLARATORY JUDGMENT
PAGE 13

                    CASCADIA LAW GROUP PLLC
                    1201 THIRD AVENUE, SUITE 320
                    SEATTLE, WA 98101
                    (206) 292-6300